ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 1 6 2008
U.S. COURT OF FEDERAL CLAIMS

**DISTRIBUTION POSTAL CONSULTANTS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**No.: 08-17 C**

**Judge Eric G. Bruggink**

* * * * * * * * * * * * *

## COMPLAINT

Distribution Postal Consultants, Inc., Plaintiff, by its attorneys, Robert B. Scarlett, Michael S. Myers, and Scarlett & Croll, P.A., sues the United States, Defendant, and in support of this suit respectfully states:

### Parties

1. Distribution Postal Consultants, Inc., a/k/a Distribution Postal, Inc., Plaintiff, is a Maryland corporation.

2. The United States, Defendant, contracted to do business with the Plaintiff in the State of Maryland.

### Jurisdiction

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1), in that this action arises out of a breach of contract with the United States.

### Facts Common to All Counts

4. Plaintiff is in the business (the "Business") of producing, servicing and managing mail for its customer base for the purposes of sending mail throughout the country and throughout the world in the most economic manner.

5. For over twenty (20) years, Plaintiff or its predecessor has dealt with the Defendant and has entered into numerous agreements with the Defendant for postal discounts on its mailing

services, which discounts it passes along to its customer base, thus providing a service to its customers which permits its customers to mail, both domestically and internationally, its letters and packages for a postal rate less than the Defendant's normal postal rate.

6. By providing this postal service, Plaintiff produces millions of dollars of postal revenue for Defendant, thus benefitting and profiting the Defendant. For example, from January 1, 2006 to December 31, 2006, Plaintiff produced for the Defendant international postal revenue in excess of $23,000,000.00 and domestic postal revenue of $10,000,000.00.

7. An important and vital part of Plaintiff's business operations is its international mail service, which comprises about fifty percent (50%) of the Plaintiff's total sales and is the Plaintiff's most profitable area of business.

8. Pursuant to Plaintiff's international mail service, Plaintiff received, on April 2, 2002, from the Defendant an International Customized Mail Service Agreement (the "International Mail License"), which permits Plaintiff to mail international mail at a specific percentage discount of sixteen percent (16%), provided that Plaintiff places with Defendant at least $25,000,000.00 of actual postal on an annualized basis. This International Mail License benefits Defendant by guaranteeing Defendant certain revenues from international postage placed by Plaintiff. A copy of the International Mail License is attached hereto as Exhibit 1 and incorporated herein by reference.

9. Unbeknownst to Plaintiff, but known to Defendant, the International Mail License was transferred to a Maryland corporation, known as American Mail Sort, LLC ("American Mail Sort"), on May 30, 2002.

10. The transfer of Plaintiff's International Mail License to American Mail Sort was done by a fraudulent amendment to the International Mail License, which was submitted to Defendant by the sole member of American Mail Sort, Robert Dunbebin. Defendant, despite its own regulations, did not properly send a copy of the transfer to Defendant.

11. Unknown to Plaintiff, American Mail Sort and Robert Dunbebin used the International Mail License to improperly divert business from the Plaintiff in a manner which significantly harmed Plaintiff.

12. Around May of 2004, Barry Burns, one of Defendant's international product managers, informed Plaintiff that Plaintiff's license did not exist and had been transferred to American Mail Sort. Plaintiff immediately informed the Defendant of this improper transfer and immediately demanded that the International Mail License be returned to it in order for it to comply with its obligations under the terms and conditions of the International Customized Mail Service Agreement, which required Plaintiff to generate at least $25,000,000.00 of postal revenues.

13. Defendant did not comply with the Plaintiff's request to correct its mistake.

14. Even after the Plaintiff's demand, and after Defendant was aware of the fraudulent activities of American Mail Sort and Robert Dunbebin, Defendant decided to allow American Mail Sort and Robert Dunbebin to continue to use the improperly transferred International Mail License and, instead, issued a new international mail license to the Plaintiff on August 4, 2004.

15. Defendant also allowed American Mail Sort and Robert Dunbebin to continue to use the Plaintiff's license, even though American Mail Sort, under the Defendant's own criteria, did not qualify to use an international license of the sort that the Defendant permitted it to use. Defendant continued to allow this improper use of the license by American Mail Sort and Robert Dunbebin over the Plaintiff's continued objections. Such use was directly interfering with Plaintiff's business and directly interfering with its ability to comply with its requirements under the terms and conditions of the International Mail License Agreement.

16. Defendant's improper action of allowing American Mail Sort to use the international mail license directly caused Plaintiff to fail in its obligations to meet its licensing sales of $25,000,000.00, as required by Defendant in the International Mail License.

17. Plaintiff's government contracting and postal attorney, William J. Olson, mailed a letter dated March 21, 2005 to Defendant's agent Michael K. Plunkett concerning the events

involving American Mail Sort (the "Olson Letter"). A copy of the Olson Letter is attached hereto as Exhibit 2 and incorporated herein by reference.

18. Besides setting forth the facts of American Mail Sort's and Robert Dunbebin's improper use of Plaintiff's International Mail License, the Olson Letter attaches certain regulations (the "Regulations") of the Defendant which Defendant violated in allowing American Mail Sort to use the International Mail License. Page 3 of the Olson Letter states:

> Section 623.2.a. expressly provides, for example, that the company applying for Postal Qualified Wholesaler status "[m]ust have a minimum of one year of experience as an international or domestic mail consolidator, presorter, or letter shop." It is our understanding that AMS (American Mail Sort) was newly formed in 2002, and had barely begun operations at the time it was given its ICM (International Customized Mailing Agreement) service agreement by the Postal Service. Accordingly, we would submit that AMS was not a Postal Qualified Wholesaler, and could not possibly have qualified as a Postal Qualified Wholesaler, in May of 2002, and that AMS thus would not have been eligible for the ICM service agreement it was given by the Postal Service in May, 2002. Section 623.2.b. expressly provides that the company "[m]ust have realized at least $1 million in gross international revenues with the Postal Service in the most recent calendar year for services it provided in connection with mail that originated in the United States." Again, AMS could not possibly have made such a showing. Based upon these facts alone, and even without seeing the AMS application form, there would appear to have been no legitimate reason that would support the Postal Service's acceptance of AMS as a Postal Qualified Wholesaler, and thus no basis for issuance of an ICM service agreement to AMS in May 2002. We are not certain, of course, concerning all of the reasons for why the action that was taken actually occurred, but there is clear evidence that it should not have occurred.

19. Besides identifying that Defendant had breached its own regulation, i.e. Section 623.2, what is interesting about the Olson Letter is the fact that within three months of receiving the Olson Letter, Defendant changed its regulations in a manner which would permit American Mail Sort to obtain the International Mail License.

20. To rectify this problem, and in recognition of the failure of Defendant to solve the problem after being informed of the improper use of the International Mail License, Plaintiff filed suit against Robert Dunbebin and American Mail Sort on October 12, 2004, in the Circuit Court for Baltimore City (Civil No. 4-C-04-007557).

21. On December 12, 2005, Plaintiff received a judgment (the "Judgment") from the Circuit Court against American Mail Sort and Robert Dunbebin, jointly and severally, in the amount of $755,197.21, plus $10,000,000.00 in punitive damages, for a total of $10,755,197.21. A copy of the Judgment is attached hereto as Exhibit 3 and incorporated herein by reference.

22. Plaintiff's vice president, Louis F. Haber, Sr., immediately faxed a copy of the Judgment to Defendant so Defendant could comply with the Circuit Court's Order, preventing the continued use by American Mail Sort of the Plaintiff's International Mail License.

23. In addition to the Judgment, and as a result of the Judgment, Plaintiff discovered that American Mail Sort had been committing fraud on Defendant, initiating an investigation by Defendant of American Mail Sort and Robert Dunbebin; Plaintiff has cooperated with Defendant's investigation.

24. As a result of Defendant's improper actions, Plaintiff has been monetarily harmed.

25. Pursuant to the administrative requirements for filing a claim (the "Claim") against Defendant, Plaintiff filed on or about February 27, 2006 a claim for damages, injury or death on Standard Form 95, as prescribed by the Department of Justice, 11 C.F.R. § 14.2. A copy of the Claim is attached hereto as Exhibit 4 and incorporated herein by reference.

26. The undersigned attorney received a letter dated September 26, 2006 from Wendy Wiedemann Hudson, Attorney for Defendant denying Plaintiff's Claim. A copy of the letter is attached hereto as Exhibit 5 and incorporated herein by reference. In part the letter states:

> In accordance with 28 U.S.C. § 2401(b) and 39 C.F.R. 912.9(a), if dissatisfied with the Postal Service's final denial of an administrative claim, a claimant may file suit in a United States District Court no later than six (6) months after the date the Postal Service mails the notice of that final action. Accordingly, any suit filed in regards to this denial must be filed no later than six (6) months from the date of the mailing of this letter, which is the date shown above. Further, note the United States of America is the only proper defendant in a civil action brought pursuant to the Federal Tort Claims Act and such suit may be heard only by a federal district court.

27. This proceeding is filed within the time prescribed by 28 U.S.C. § 2401(b) and 39 C.F.R. 912.9(a).

28. Defendant will not renew the License unless the Plaintiff agrees to pay the Defendant approximately $136,000.00, which amount represents the penalty associated with not being able to complete the minimum of $25,000,000.00 in postal revenue sales, as required by the International Mail License.

29. Plaintiff believes, and therefore avers, that it is unfair and unjust to have required Plaintiff to meet its minimum of $25,000,000.00 in postal revenue sales, because it was Defendant's improper actions which caused Plaintiff to be unable to meet this minimum requirement as set forth in the International Mail License.

30. Plaintiff, given normal business circumstances, could have met its requirements of $25,000,000.00 of annualized postage sales without the interference of American Mail Sort and the Defendant.

31. Plaintiff has a contract right with the Defendant and a right to good faith and fair dealing by Defendant, as set forth above and in the International Mail License.

32. Defendant has not complied with its responsibilities and obligations under International Mail License and has not dealt with Plaintiff fairly and in good faith to the irreparable damage of Plaintiff.

33. As a result of Defendant's actions, Plaintiff has retained the service of James G. Sturgill, CPA, CVA, ABV who analyzed Plaintiff's damages and calculates that Plaintiff was damaged by Defendant in the amount of $1,119,362.00. A copy of Mr. Sturgill's draft report is attached hereto as Exhibit 7 and incorporated herein by reference.

## **Count I**

## **(Breach of Contract)**

34. Plaintiff incorporates herein, by reference, each and every allegation set forth in the above paragraphs.

35. The International Mail License represents a contractual agreement between the Plaintiff and the Defendant, which the Defendant breached when it improperly transferred the International Mail License to American Mail Sort and, also, after being duly informed of the improper transfer, allowed American Mail Sort to continue utilizing the International Mail License even though American Mail Sort did not qualify for such an international mail license under the Defendant's own criteria and regulations for issuing such a license.

36. As a result of Defendant's breach of contract, Plaintiff has experienced monetary harm and was damaged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in its favor of the Plaintiff and against the Defendant in the amount of $1,119,362.00, plus pre-judgment interest and costs of this suit; and

b. Grant such other and further relief as deemed just by this Court.

**Count II**

**(Implied Covenants of Good Faith and Fair Dealing)**

37. Plaintiff incorporates herein, by reference, each and every allegation set forth in Count I above.

38. In that the International Mail License constitutes a contract between Plaintiff and Defendant, there is a covenant of good faith and fair dealing which is implied in said contract under which Defendant had an obligation to perform its obligations under the contract in good faith and with fair dealing and pursuant to the terms of the International Mail License Agreement.

39. Plaintiff, at all times, performed its obligations, conditions and agreements imposed by the International Mail License in good faith and in fair dealing.

40. Defendant breached the implied covenant of good faith and fair dealing by failing to prevent the improper transfer of the International Mail License to American Mail Sort, by failing to correct the improper transfer of the International Mail License after being duly informed by the

Plaintiff, and by failing to terminate American Mail Sort's ability to use the International Mail License when Defendant discovered that American Mail Sort did not comply with the criteria it uses for determining whether a company qualifies for the International Mail License.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in its favor of the Plaintiff and against the Defendant in the amount of $1,119,362.00, plus pre-judgment interest and costs of this suit; and

b. Grant such other and further relief as deemed just by this Court.

Respectfully submitted,

Robert B Scarlett Date: 1/15/08

Robert B. Scarlett

Michael S. Myers Date : 1/15/08

Michael S. Myers

SCARLETT & CROLL, P.A.
201 N. Charles Street, Suite 600
Baltimore, MD 21201
(410) 468-3100
Fax (410) 332-4026

*Attorneys for Plaintiff*