**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Distribution Postal Consultants, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-17C |
| | ) | (Judge Bruggink) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

We respectfully submit the following proposed findings of uncontroverted fact in support of our motion for summary judgment:

1. Plaintiff, Distribution Postal Consultants ("DPC"), is a mail consolidator in the business of producing, servicing, and managing mail for its customers. Plaintiff's Complaint ("Compl.") at ¶ 4. DPC has had extensive dealings with the United States Postal Service ("USPS" or "Postal Service"), including having entered into numerous agreements with USPS for postal discounts on its mailing services. Compl. at ¶ 5. DPC passes along the discounts to its customers, allowing them to ship postal items for less than USPS's normal rates. Id.

2. On April 24, 2002, Mr. Robert Dunbebin, in his capacity as Vice-President of DPC, signed an International Customized Mail Agreement ("Original ICM Agreement" or "Original Agreement") with the United States Postal Service ("USPS").[1] Compl. at ¶ 8; Pl. Exh. 1 at 7.[2]

[1] The Original ICM Agreement is attached to DPC's complaint as Exhibit 1 (hereinafter "Pl. Exh. 1"). Additional exhibits attached to DPC's complaint are cited to herein as "Pl. Exh. ___."

[2] Although DPC's complaint alleges that the date of the agreement was April 2, 2002, the agreement itself is dated April 24, 2002 (by both parties' signatories). See Pl. Exh. 1.

3. The Original ICM Agreement was a three year contract giving DPC a 16% discount on international mail, but required that DPC tender, to USPS, mail generating at least $25,000,000 of actual postage on an annual basis. Compl. at ¶ 8; Pl. Exh. 1 at Art. 8. Under the terms of the Original ICM Agreement, if DPC did not meet its annual minimum postage obligation, additional postage would be due to USPS based upon a schedule of discounts for the amount of mail actually tendered. Id. Finally, DPC had only three months to pay USPS any such additional postage due. Id.

4. On May 30, 2002, Mr. Dunbebin, once again purporting to act on behalf of DPC, requested that USPS terminate the Original ICM Agreement. See Pl. Exh. 2 (March 21, 2005 Letter from W. Olson, Esq. to M. Plunkett) at 2.

5. USPS agreed to Mr. Dunbebin's request. Id. Thus, on May 30, 2002, Mr. John Alepa, a USPS manager, and Mr. Dunbebin – once again representing himself as Vice-President of DPC – signed an amendment to DPC's Original ICM Agreement that terminated that contract. See DPC's Complaint in DPC v. Dunedin and AMS, Case No. 4C-04-007557 (Cir. Ct. Balt. City 2004) at ¶ 8; Amendment One to the Original ICM Agreement.[3]

---

[3] Both documents are attached as Exhibit 4 to DPC's Complaint in this case. We note that DPC's case in state court was captioned incorrectly, misspelling Mr. Dunbebin's name as "Dunedin." In that case, DPC sued Mr. Dunbebin and American Mail Sort ("AMS") in the Circuit Court for Baltimore City. Compl. at ¶ 20; Pl. Exh. 4. DPC alleged AMS's ICM agreement with USPS directly interfered with DPC's business by preventing DPC from meeting its minimum postage obligations. Compl. at ¶¶ 15-16, 20; Pl. Exh. 4. On December 12, 2005, DPC received a default judgment against AMS and Mr. Dunbebin, jointly and severally, in the amount of $755,197.31, plus $10,000,000.00 in punitive damages. Compl. at ¶ 21; Pl. Exh. 4.

6. Indeed, in DPC's state court complaint against Mr. Dunbebin, DPC alleged that he "represent[ed] himself to be acting with the corporate authority of DPC" when he "terminated DPC's ICM with the USPS, effective May 30, 2002." Id.

7. DPC initially filed suit against USPS in the United States District Court for the District of Maryland ("District Court"), seeking a temporary restraining order ("TRO"), amongst other relief. See Def. Exh. 5.

8. During a hearing on DPC's TRO motion, Mr. Robert B. Scarlett, DPC's counsel both in the District Court and here, agreed that Mr. Dunbebin "[h]ad, in fact, signed the original [ICM] agreement . . . [o]n behalf of [DPC]." TRO Tr. 9:10-15 (Def. Ex. 8).

9. According to Mr. Scarlett, Mr. Dunbebin "was an authorized agent [of DPC] . . . for the purpose of signing that [ICM] agreement." TRO Tr. 10:19-22; see also id. at 11:12-22.

10. As far as DPC is aware, Mr. Dunbebin misrepresented his authority to USPS when he asked USPS to terminate DPC's Original ICM Agreement. Id. at 12:4-10.

11. In fact, Mr. Scarlett agreed that DPC is "not suggesting the Post Office was acting in some sort of unlawful concert with Mr. Dunbebin." Id. at 95:18-22 (emphasis added). Moreover, Mr. Scarlett agreed that DPC "introduced [Mr. Dunbebin] to the Post Office and vouched for him by making him their agent," id. at 95:23-25, and that DPC is "not suggesting any harm or any fault on the part of the Post Office." Id. at 96:1-3; see also id. at 96:11-15 (DPC concurring with the court's observation that USPS employees were "not the bad guys here" but rather that DPC and USPS were "both . . . taken by [Mr. Dunbebin]").

12. During the two year period following the termination of the Original Agreement – from May 2002 until May 2004 – DPC never informed USPS that the amendment to the Original ICM Agreement was invalid. USPS received no shipping volume from DPC during this two year period and, therefore, had no reason to believe that anything putatively improper had occurred. See Def. Exh. 10 (May 11, 2005 Letter from M. Plunkett to W. Olson) at 2.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274

March 31, 2008

Counsel for Defendant