**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Distribution Postal Consultants, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-17C |
| | ) | (Judge Bruggink) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, ITS MOTION TO DISMISS**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274

June 6, 2008

Counsel for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, ITS MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Only Count I of DPC's Complaint Remains At Issue Because DPC Has Agreed That Count II Of Its Complaint Should Be Dismissed With Prejudice . . . . . . . . . . . . . 1

II. The Government Is Entitled To Summary Judgment Because DPC Has Not Met Its Burden Under RCFC 56 To Establish A Genuine Issue of Material Fact . . . . . . . 2

A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. DPC's Binding Admissions Before The District Court Demonstrate That The USPS Did Not Breach Its Agreement with DPC . . . . . . . . . . . . . . . . . . . 5

C. The Uncontested Facts Demonstrate That The Government Did Not Breach Its Contract With DPC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

American Anchor & Chain Corp. v. United States,
331 F.2d 860 (Ct. Cl. 1964) . . . . . . . . . . passim

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 3

Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,
731 F.2d 831 (Fed. Cir. 1984) . . . . . . . . . . 4

Boyajian v. United States,
423 F.2d 1231 (Ct. Cl. 1970) . . . . . . . . . . 15

Brunner v. United States,
70 Fed. Cl. 623 (2006) . . . . . . . . . . 9, 12

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 3

D & L Const. Co. and Assoc. v. United States,
402 F.2d 990 (Ct. Cl. 1968) . . . . . . . . . . 16

De Brousse v. United States,
28 Fed. Cl. 187 (1993) . . . . . . . . . . 6

Deluxe Check Printers v. United States,
14 Cl. Ct. 782, 794 (1988) . . . . . . . . . . 6

Delmarva Power & Light Co. v. United States,
79 Fed. Cl. 205 (2007) . . . . . . . . . . 4

E.C. McAfee A/C Bristol Metal Indus. of Canada v. United States,
832 F.2d 152 (Fed. Cir. 1987) . . . . . . . . . . 6

Ferring B.V. v. Barr Labs.,
437 F.3d 1181 (Fed. Cir. 2006) . . . . . . . . . . 4

George Hyman Constr. Co. v. United States,
30 Fed. Cl. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Halifax Paving, Inc. v. United States Fire Ins. Co.,
481 F. Supp. 2d 1331 (M.D. Fla. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Handel v. United States,
16 Cl. Ct. 70 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Harper/Nielsen-Dillingham, Builders, Inc. v. United States,
81 Fed. Cl. 667 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Herbert Constr. Co. v. Continental Ins. Co.,
931 F.2d 989 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hill v. FTC,
124 F.2d 104 (5th Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hopkins v. Arkansas.,
2007 WL 2996842 (E.D. Ark. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Johnson v. Nationwide Gen. Ins. Co.,
971 F. Supp. 725 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McCaskill v. SCI Mgmt. Corp.,
298 F.3d 677 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Oman-Fischbach International (JV) v. Pirie,
276 F.3d 1380 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Radiant Tech. Corp. V. Electrovert USA Corp.,
122 F.R.D. 201 (N.D. Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Riley & Ephriam Constr. Co., Inc. v. United States,
408 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

River Construction Corp. v. United States,
159 Ct. Cl. 254, 270 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SAI Indus. Corp. v. United States,
63 Fed. Cl. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Stelco Holding Co. v. United States,
44 Fed. Cl. 703 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tedeschi v. Barney,
95 F.R.D. 182 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Cunningham,
405 F.3d 497 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Distribution Postal Consultants, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-17C |
| | ) | (Judge Bruggink) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, ITS MOTION TO DISMISS**

On March 31, 2008, defendant, the United States, filed a motion respectfully requesting this Court to grant summary judgment to the United States on Counts I and II of the complaint, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). In the alternative, we asked this Court to dismiss Count II of plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), or, pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction. On May 8, 2008, plaintiff, Distribution Postal Consultants, Inc. ("DPC"), filed its response brief in opposition to our March 31, 2008 motion. We respectfully file this reply brief in support of our motion for summary judgment.

I. Only Count I of DPC's Complaint Remains At Issue Because DPC Has Agreed That Count II Of Its Complaint Should Be Dismissed With Prejudice

DPC, in its response brief, withdrew Count II of its complaint, arguing that our motion for summary judgment and motion to dismiss as to Count II should be denied as moot. See DPC Resp. at 6. DPC, however, did not move for voluntary dismissal of that count pursuant either to RCFC 41, or any other rule of this Court. Nor did DPC indicate whether it intended to effectuate a dismissal of that count with or without prejudice. Accordingly, undersigned counsel for the United States contacted counsel for DPC, who indicated that, indeed, DPC agrees to a dismissal

of Count II with prejudice. Thus, we concur that when the parties have filed and the Court has granted a joint stipulation of dismissal with prejudice, our motion for summary judgment and to dismiss will be moot with respect to Count II.[1]

II. The Government Is Entitled To Summary Judgment Because DPC Has Not Met Its Burden Under RCFC 56 To Establish A Genuine Issue of Material Fact

With respect to Count I of DPC's complaint, the Government is entitled to summary judgment because DPC has not demonstrated a genuine issue of material fact.[2] First, DPC has not contested the fact that the United States Postal Service ("USPS") was unaware that Mr. Robert Dunbebin's actual authority had been revoked by DPC. In that regard, DPC does not even attempt to refute, or otherwise to explain, the binding admissions counsel for DPC made in the earlier iteration of this case before the United States District Court for the District of Maryland ("district court"). Those binding admissions are fatal to DPC's case here. Second, DPC does not contest the fact that it suffered no damages due to actions of the USPS.

[1] In any event, we doubt whether DPC unilaterally could withdraw Count II at this point. See RCFC 41(a)(1) ("an action may be dismissed by the plaintiff without order of court (I) by filing a notice of dismissal at any time before service of an answer or of a motion for summary judgment, whichever first occurs"); see also Radiant Tech. Corp. V. Electrovert USA Corp., 122 F.R.D. 201, 203-04 (N.D. Tex. 1988) (noting that "outright denial of a [voluntary] motion to dismiss" proper when "dismissal will preclude the court from deciding a pending case or claim-dispositive motion" and, conversely, an "[o]utright dismissal should be refused, however, when a plaintiff seeks to circumvent an expected adverse result"); Tedeschi v. Barney, 95 F.R.D. 182, 183 (S.D.N.Y. 1982) ("[T]here is the fact that a motion for partial summary judgment is pending as to the sixth claim. Thus the plaintiffs were not authorized under the rule to enter a unilateral voluntary dismissal.").

[2] Contrary to RCFC 56(h)(2), DPC did not file a response to our Proposed Findings of Uncontroverted Fact. See also RCFC 56(h)(3) ("In determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are controverted by affidavit or other written or oral evidence.").

A. Standard Of Review

According to RCFC 56(c), summary judgment is appropriate if the evidence before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). To prevail on a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of evidence to support an essential element of the non-movant's claim. Riley & Ephriam Constr. Co., Inc. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986)); George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173 (1993).

Once the moving party has satisfied its initial burden, the burden shifts to the opposing party to establish a genuine issue of material fact, "that is, evidence such that a reasonable [trier of fact] could return a verdict for the nonmoving party" with regard to that element of the claim. Anderson, 477 U.S. at 248, quoted in Long Island Sav. Bank v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007). The non-movant, however, "cannot rest on mere allegations, but must present actual evidence." Long Island Sav., 503 F.3d at 1244. Thus, RCFC 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." RCFC 56(e) (emphasis added); see also Anderson, 477 U.S. at 248-49.

While the initial burden is on the Government as the moving party in this case, once that burden is met, DPC, in turn, must present sufficient specific factual evidence to survive summary judgment. Harper/Nielsen-Dillingham, Builders, Inc. v. United States, 81 Fed. Cl. 667 (2008). "In other words, in the oft-repeated adage, when the moving party has met its initial burden under Rule 56, the nonmoving party must meet proof with proof, and if the nonmoving party fails to do so, summary judgment, if appropriate, must be entered." Hopkins v. Arkansas. 2007 WL 2996842, *2 (E.D. Ark. 2007) (emphasis added) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587(1986)). Relatedly, mere "[a]ttorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment." Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 217 (2007) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)); Ferring B.V. v. Barr Labs., 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome . . . summary judgment.").

In this case, the unsupported allegations in the complaint and the attorney argument in DPC's response brief are insufficient to overcome the evidence put forth by the Government that it did not breach its contract with DPC. In our motion for summary judgment we demonstrated that Mr. Dunbebin had apparent authority to effectuate the amendment of DPC's Original ICM Agreement. In DPC's response brief, DPC disputes that Mr. Dunbebin had such authority, but does not meet "proof with proof" such that it can oppose our motion for summary judgment. In particular, DPC offers no evidence to contradict the record evidence that we filed with the Court in support of our motion for summary judgment. Moreover, DPC does not dispute the binding judicial admissions its counsel made before the District Court. DPC's conclusory allegations

and attorney arguments are insufficient to create a material issue of disputed fact, and, accordingly, the Court should grant summary judgment to the United States.

B. DPC's Binding Admissions Before The District Court Demonstrate That The USPS Did Not Breach Its Agreement with DPC

DPC does not dispute and, therefore, concedes, see RCFC 56(h)(3), that Mr. Dunbebin defrauded both DPC and USPS by terminating the Original ICM Agreement, and by signing a new ICM agreement with USPS on behalf of AMS. Compl. at ¶ 10; Pl. Exh. 2 at 2; Def. Exh. 8 (TRO Tr. 12:8-11; 95:14-25; 96:1-4; 96:11-15 (Mr. Robert B. Scarlett admits that USPS was defrauded by Mr. Dunbebin's misrepresentations)); see also Def. Exh. 8 (TRO Tr. at Tr. 100:16-19; 104:21-23; 108:4-5 (district court noting that USPS is innocent and is a victim of fraud)); Defendant's Proposed Findings of Uncontroverted Fact ("PFUF") at ¶ 11. Therefore, regardless of what Mr. Dunbebin's liability may be to DPC, USPS cannot be held responsible for DPC's putative losses resulting from Mr. Dunbebin's actions.

Mr. Scarlett's admissions before the district court provide a sufficient basis, particularly in conjunction with the remaining undisputed facts, to grant our motion for summary judgment. See, e.g., McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 680 (7th Cir. 2001) (citing cases and holding that "[t]he verbal admission by SCI's counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings"); United States v. Cunningham, 405 F.3d 497, 504 (7th Cir. 2005) ("Such a clear, deliberate and unambiguous concession [during oral argument] is sufficient to constitute a judicial admission . . . ."); Halifax Paving, Inc. v. United States Fire Ins. Co., 481 F. Supp. 2d 1331, 1336 (M.D. Fla. 2007) (cataloguing decisions in support of proposition that "[s]tatements made by an attorney during oral argument are binding judicial admissions and may form the basis for

deciding summary judgment").

This Court has recognized that "[i]t is well settled that judicial admissions are of the highest probative value inasmuch as they are 'beyond the power of evidence to controvert them.'" De Brousse v. United States, 28 Fed. Cl. 187, 188-89 (1993) (quoting Deluxe Check Printers v. United States, 14 Cl. Ct. 782, 794 (1988), and Hill v. FTC, 124 F.2d 104, 106 (5th Cir. 1941)). In De Brousse, this Court denied plaintiff's motion for summary judgment when "plaintiff freely admitted in open court that there are genuine issues of material fact relating to the merits." 28 Fed. Cl. at 189 (emphasis in original). In this case, plaintiff DPC did more than concede, before the district court, a legal conclusion that there were no disputed issues of material fact. Rather, DPC conceded the very facts that are fatal to its claim for breach of contract. See PFUF at ¶ 11.

Accordingly, Mr. Scarlett's admissions that DPC "introduced [Mr. Dunbebin] to the Post Office and vouched for him by making him their agent," see TRO Tr. (Def. Exh. 8) at 95:23-25, and that DPC is "not suggesting any harm or any fault on the part of the Post Office[,]" provide conclusive proof that USPS had no reason to believe that Mr. Dunbebin lacked actual authority to act on behalf of DPC when USPS executed the amendment to DPC's Original ICM Agreement on May 30, 2002. See id. at 96:1-3; see also id. at 96:11-15 (DPC concurring with the court's observation that USPS employees were "not the bad guys here" but rather that DPC and USPS were "both . . . taken by [Mr. Dunbebin]"). Such "judicial admissions provide proof possessing the highest possible probative value, rendering the facts therein indisputable." SAI Indus. Corp. v. United States, 63 Fed. Cl. 1, 4 n.8 (2004) (citing E.C. McAfee A/C Bristol Metal Indus. of Canada v. United States, 832 F.2d 152, 154 (Fed. Cir. 1987), and noting that the court

"would be justified to dismiss plaintiff's . . . argument based solely on plaintiff's contrary admission").

While "[a] judicial admission is, of course, conclusively binding" upon the party that made it, "a judicial admission is not necessarily binding upon the court." Stelco Holding Co. v. United States, 44 Fed. Cl. 703, 711 (1999) (emphasis in original). "[T]he court has a duty to reject a judicial admission that is demonstrably false." Id. In this case, however, DPC has made no effort to cast doubt upon Mr. Scarlett's admissions, much less to show that they were "demonstrably false." Id.

This Court's decision in Handel v. United States, 16 Cl. Ct. 70 (1988), is instructive in these circumstances because it involved facts remarkably similar to those at issue in this case. In Handel, a decedent's company was allegedly owed money under a contract with the United States Department of Housing and Urban Development (HUD). 16 Cl. Ct. at 71. Although decedent's wife, Mrs. Margaret Handel, was appointed executrix, the decedent's son, Mr. David Handel, submitted a claim to HUD for the amount owed, pursuant to the Contract Disputes Act ("CDA"). Id. Although a HUD contracting officer issued a final decision denying the claim, Mrs. Handel filed "a mechanic's lien foreclosure and contract action . . . in the Common Pleas Court of Mahoning County, Ohio." Id. In that case, Mrs. Handel represented that she had filed the CDA claim with HUD. Id. Mrs. Handel's suit in the Common Please Court was removed to the United States district court, which dismissed the suit for, amongst other reasons, lack of subject matter jurisdiction. Id. at 71-72.

Following the dismissal of her first suit, Mrs. Handel filed another CDA claim with HUD, arguing that the first claim was invalid because it was filed by David Handel, who was unauthorized to do so. Id. at 72. Mrs. Handel filed suit in this Court on the second CDA claim after HUD indicated that it already had denied the identical claim. Id. The Government argued that her suit was barred by the statute of limitations. Id. This Court recognized that "[i]mplicit in the defendant's statute of limitation argument is the belief that the claim as initially submitted . . . by Mr. David Handel, as agent for the decedent's estate, . . . was made with the requisite authority and was otherwise validly presented." Id. In contrast, "plaintiff's opposition [was] based solely on the theory that David Handel had no authority from the decedent's estate to submit a claim" to HUD. Id.

This Court rejected Mrs. Handel's argument and dismissed her case, holding that "the facts of this case . . . persuade this Court that Mr. David Handel was clothed with the requisite authority . . . ." 16 Cl. Ct. at 73. The Court held that Mr. Handel possessed actual authority to file the claim and, "at a minimum, apparent authority to act on behalf of . . . [the] estate." Id. at 73-74. In so holding, the Court relied, in part, upon Mrs. Handel's representation in the Court of Common Pleas that "attest[ed] to the fact that [she] . . ., by and through Mr. David Handel, filed a claim with HUD." Id. at 74. This Court concluded that Mrs. Handel's statement in the state court constituted a "judicial admission" and "is in itself conclusive on the question of whether the first claim filed with HUD . . . was on behalf of . . . [the] estate." Id. Likewise, Mr. Scarlett's admissions before the district court are dispositive in this case.

C. The Uncontested Facts Demonstrate That The Government Did Not Breach Its Contract With DPC

Although the above-discussed judicial admissions alone provide a sufficient basis upon which this Court should grant our motion for summary judgment, our motion should also be granted because, as explained in more detail below, the undisputed facts demonstrate: (1) that the Government reasonably relied upon Mr. Dunbebin's apparent authority; and (2) DPC suffered no damages as a result of any Government action.

DPC makes only one argument in opposition to our motion for summary judgment. See DPC Resp. at 4-6. DPC argues that USPS had a "duty to inquire" regarding Mr. Dunbebin's actual authority at the time he requested USPS to execute the amendment terminating the original ICM agreement. Id. DPC concedes in its response brief, however, that "DPC expressly authorized its agent, Mr. Robert Dunbebin, the Vice-President of DPC at the time, to execute the [original ICM] agreement on behalf of DPC." Id. at 2.

"[W]hen a principal creates an appearance of an agent's authority expressly, or by holding out the agent (that is, by implication), no duty of inquiry falls on third parties to verify this authority." Brunner v. United States, 70 Fed. Cl. 623, 629 (2006) (emphasis added); see DPC Resp. at 4 (discussing Brunner). Notwithstanding the general rule articulated in Brunner, DPC argues that the Government "had a duty to use reasonable means to determine Mr. Dunbebin's authority" and that "USPS failed to make an inquiry to DPC regarding Mr. Dunbebin's actual authority to terminate the contract." DPC. Resp. at 6. The facts in the record before this Court, however, do not justify a departure from the normal rule that the Government was entitled to rely upon Mr. Dunbebin's apparent authority.

First, although Mr. Dunbebin apparently had formed his own company, American Mail Sort, LLC ("AMS"), on the same date that he signed the Original ICM on behalf of DPC, see DPC Resp. at 2, nowhere does DPC even allege, let alone provide evidence, that the USPS was aware of that fact. Second, the fact that AMS had the same corporate address as DPC, see Def. Resp. at 3 & 4, did not place USPS on any notice of fraud on the part of Mr. Dunbebin.

To the contrary, "[t]he Postal Service is aware that there a number of international mail consolidators and that the business relationships between these consolidators change from time to time. It would not be unusual for one consolidator to handle volumes for another consolidator, and, for the most part, the Postal Service would not be aware" of the particulars of such relationships. See Def. Mot. at Exh. 10 (May 11, 2005 letter from USPS manager Michael Plunkett to DPC). In fact, Article 20 of the original ICM agreement (see Exhibit 1 attached to DPC's complaint) provides that the "rights of each party under this Agreement" may be "assigned or transferred to any other person, firm, or corporation, or other entity with[] the prior, express, and written consent of the other party." Moreover, Article 20 explicitly contemplates such transfer "to a subsidiary or affiliate of the Mailer." Id. In light of that provision, USPS had no reason to believe that Mr. Dunbebin's motivations were improper or fraudulent. If anything, the identity of the two companies' addresses would have suggested to USPS that DPC itself was well aware of AMS and its activities.

Third, the original ICM agreement's "Cancellation" provision – permitting the agreement's termination only after a party provides six months prior notice – is irrelevant because that provision deals only with unilateral terminations. See DPC Resp. at 2 (citing "Article 6, Section 5 of the Original ICM Agreement"); DPC Resp. at Exh. 1. In this case, the

USPS did not unilaterally terminate the Agreement but executed a bilateral amendment with DPC that terminated that contract early. See PFUF at ¶ 5; see also DPC Compl. at Exh. 4 (Document 4-4, pg. 30 of 44 (noting that "purpose of this Amendment is to modify the term of the Agreement")). DPC does not explain how the "Cancellation" provision served to place USPS on notice of Mr. Dunbebin's possible fraud. Again, Mr. Dunbebin's actions were not inconsistent with Article 20 of the original ICM agreement.[3]

DPC argues that AMS was not qualified for an ICM agreement because AMS did not have a minimum of one year of experience as an international or domestic mail consolidator. DPC fails, however, to provide any evidence that USPS was aware of AMS's inexperience. Although DPC argues that USPS had such notice "because of its own regulations[,]" see DPC Resp. at 5, DPC does not, and cannot, explain how the mere existence of a USPS regulation translates into knowledge of a particular fact (i.e., that AMS allegedly was not qualified for an ICM agreement). In any event, that regulation does not, by its terms, preclude a new company from taking advantage of the experience of its principals, in this case, Mr. Dunbebin. See DPC Resp. at 2-3, 5 (discussing International Mail Manual of 2002, § 623.2).

In sum, DPC's case consists of nothing more than 20/20 hindsight and Monday morning quarterbacking. In that regard, we note that DPC does not appear to dispute the fact that when

---

[3] To be clear, the Government does not contend that the parties actually invoked Article 20 of the original ICM agreement to effectuate an assignment or transfer of rights under that agreement (i.e., to AMS). As explained above, DPC and the USPS instead executed a bilateral amendment terminating the agreement. Nevertheless, to the extent DPC contends that the USPS, in fact, effectively transferred DPC's ICM agreement to AMS, the bilateral amendment satisfies the requirements of Article 20. More importantly, however, in light of the substance of Article 20, USPS had no reason to believe that Mr. Dunbebin's request was unusual, much less fraudulent.

Mr. Dunbebin asked USPS to amend the original ICM agreement to terminate it, Mr. Dunbebin was still vice-president of DPC. Although DPC asserts that "[a]t no time did DPC authorize, expressly or implicitly, Mr. Dunbebin to terminate the Original ICM Agreement[,]" see DPC Resp. at 3, DPC provides no evidence in support of that assertion. In fact, if Mr. Dunbebin remained vice-president of DPC at the time of the aforementioned termination amendment, he may have possessed actual authority to have requested and executed it. See Brunner, 70 Fed. Cl. at 628 ("Authority is not apparent merely because it was not expressly conferred . . . . The lack of such specificity in the communication between a principal and an agent may result in what is known as implied authority which, under the law of agency, is considered to be actual authority just the same as an express conferral of power." (emphasis added)).

In any event, the Government was entitled to rely upon Mr. Dunbebin's apparent authority. See Johnson v. Nationwide Gen. Ins. Co., 971 F. Supp. 725, 731 (N.D.N.Y. 1997) (citing Herbert Constr. Co. v. Continental Ins. Co., 931 F.2d 989, 996 (2d Cir. 1991), for the proposition that "[a]pparent authority may continue after actual authority has been revoked" and "lasts until a third party has actual notice of an agent's termination or until the third party has enough information to put that individual on inquiry"). In this case, there is no evidence that Mr. Dunbebin's actual authority had been revoked at the time he signed the termination amendment. Moreover, and in light of Article 20 of the ICM agreement, permitting an assignment of rights "to a subsidiary or affiliate of the Mailer," "[t]he circumstances surrounding this case were not so extraordinary or novel that it was unreasonable for" USPS to have relied upon Mr. Dunbebin's "apparent authority without actually inquiring into his actual authority." Johnson, 971 F. Supp. at 735-36 (explaining that "[t]he question is whether the [principal's] omissions left

[the agent] with sufficient apparent authority . . . so that [the third party] could rely upon that authority without inquiry about its foundation").

For example, the United States Court of Claims analyzed a case in which "[t]hrough carelessness or design, th[e] principal pushed its agent to the very forefront of its sole operation and kept well hidden all the strings it had tied to him." American Anchor & Chain Corp. v. United States, 331 F.2d 860, 863 (Ct. Cl. 1964). The Court of Claims held that the principal thereafter "cannot complain if, like Pinocchio, [the agent] broke the strings and grasped the substance of the role it allowed [the agent] to appear to have." Id. The Court of Claims found that the Government "did not have the burden of ferreting out unrevealed restrictions that might have been placed on the agent." Id. (holding that "[b]y its own affirmative conduct as well as its omissions, plaintiff made it entirely reasonable for the Government to believe that [the agent] had authority to commit the company"). We note that, in American Anchor, the agent "was known not to be an officer of the corporation." Id. (emphasis added). In contrast, DPC does not dispute that Mr. Dunbebin served as DPC's Vice-President. See Restatement (Third) of Agency § 3.03 cmt. b (2006) ("If a corporation permits a vice president to exercise significant transactional functions and to make or appear to be in control of operational decisions, it creates a basis on which actual or apparent authority may arise."). To allow DPC "to now come forward and repudiate [Mr. Dunbebin's] agency without any adequate explanation would be in effect to condone the misleading of an innocent party, which in this case is the Federal Government." See Handel, 16 Cl. Ct. at 74.

Finally, DPC's factual concessions demonstrate that the USPS cannot be held responsible for any DPC losses. We note, once again, that during the two year period following the

termination of the Original Agreement – from May 2002 until May 2004 – USPS received no shipping volume from DPC. See PFUF at ¶ 12 (citing Def. Exh. 10 (May 11, 2005 letter from M. Plunkett to W. Olson) at 2).

DPC, thereafter, claimed that the original ICM agreement was improperly transferred to AMS and demanded that USPS comply with the terms of the Original ICM Agreement. DPC Compl. at ¶ 12. On August 4, 2004, however, USPS entered into a new ICM agreement with DPC (the "Second ICM Agreement"). Compl. at ¶ 14. The Second ICM Agreement had an effective date of August 14, 2004. See Second ICM Agreement at Art.12 ( Def. Exh. 2). Upon the expiration of the Second ICM Agreement, DPC and USPS executed a new ICM agreement (the "Third ICM Agreement") in December 2005. See Third ICM Agreement at Art. 12 (Def. Exh. 3). The Third ICM Agreement was to expire on December 31, 2006. Id. In 2004, 2005, and 2006, DPC failed to meet its minimum postage obligations as required by the new ICM agreements. Compl. at ¶¶ 16, 28. It was not until USPS notified DPC that it owed a deficiency of approximately $136,000 for failing to meet its minimum postage obligations that DPC filed, on February 27, 2006, an administrative claim under the provisions of the Federal Tort Claims Act ("FTCA"), see 28 U.S.C. §§ 1346(b), 2671-2680, for monetary damages. Compl. at ¶ 25.

Thus, there are several additional problems fatal to DPC's complaint here. First, DPC accrued the debt it now owes the USPS based upon the new ICM agreements it signed in 2004, 2005, and 2006. Because DPC executed new ICM agreements, "plaintiff's conduct, after it was made aware of the [amendment], amounted to ratification." American Anchor, 331 F.2d at 865. In fact, rather than pursuing a claim that the original ICM agreement remained valid, DPC, like the plaintiff in American Anchor, "conferred with the defendant . . . and sought an acceptable

way out of its difficulties." Id. As in American Anchor, "[t]he government evidently gave plaintiff some time to see what it could do." Id. ("[P]laintiff's course of conduct implies that it ratified the agreements well before it tried to repudiate them."). Under these facts, DPC cannot now claim that USPS is responsible for DPC's alleged financial losses.

Second, DPC does not deny that USPS received no shipping volume from DPC during the two year period following the termination of the original ICM agreement (i.e., from May 2002 until May 2004). See PFUF at ¶ 12. DPC contends, however, that it would have received credit for such shipments during that time period, but for the fact that Mr. Dunbebin fraudulently changed the license number used to stamp mail that was processed in DPC's facility (i.e., such that AMS received credit for the shipments rather than DPC). See DPC Resp. at 3 (¶¶ 14-17). Again, however, DPC provides no evidence in support of those assertions. See RCFC 56(h)(3); see also DPC Compl. at ¶ 11 (alleging that AMS and Mr. Dunbebin "improperly divert[ed] business from the Plaintiff in a manner which significantly harmed Plaintiff"); id. at ¶ 23 (alleging that DPC "discovered that American Mail Sort had been committing fraud on Defendant," the United States).

Moreover even if DPC's version of events is true, DPC fails to explain how – or to cite any authority in support of the proposition that – the Government can be held responsible for Mr. Dunbebin's fraudulent diversion of business. Boyajian v. United States, 423 F.2d 1231,1235 (Ct. Cl. 1970) ("Recovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the damages claimed resulted from and were caused by the breach. 'The costs must be tied in to fault on defendant's part.' River Construction Corp. v. United States, 159 Ct. Cl. 254, 270 (1962)."); Oman-Fischbach International (JV) v. Pirie, 276 F.3d

1380, 1385 (Fed. Cir. 2002) ("It is, of course, settled that absent fault or negligence or an unqualified warranty on the part of its representatives, the Government is not liable for damages resulting from the action of third parties."); D & L Const. Co. and Assoc. v. United States, 402 F.2d 990, 999 (Ct. Cl. 1968) ("[T]he Government is not liable for damages resulting from the action of third parties . . . .").

## CONCLUSION

For all of the above reasons, we respectfully request the Court to grant summary judgment to the United States on Count I of DPC's complaint. As to Count II of DPC's complaint, the parties intend to file a joint stipulation of dismissal with prejudice. If the joint stipulation of dismissal is not filed, we respectfully request the Court to grant our motion and dismiss Count II because DPC has presented no response to our motion.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274

June 6, 2008

Counsel for Defendant