**No. 08-17C**
**(Judge Bruggink)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**DISTRIBUTION POSTAL CONSULTANTS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

---

ROBERT B. SCARLETT, Esquire
MICHAEL S. MYERS, Esquire
201 N. Charles St., Suite 600
Baltimore, Maryland 21201
Phone : 410-468-3100
Fax: 410-332-4026

*Counsel for the Plaintiff*

June 18, 2008

# TABLE OF CONTENTS

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iii**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** . . . . . . . . . . .. . . . . . . . . . . **1**

**PLAINTIFF'S BRIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

1. SUMMARY JUDGMENT IS APPROPRIATE AS TO COUNT I OF PLAINTIFF'S COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

2. DEFENDANT COULD NOT RELY ON THE "APPARENT" AUTHORITY OF MR. DUNBEBIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

3. THE UNITED STATES BREACHED ITS CONTRACT WITH DISTRIBUTION POSTAL CONSULTANTS . . . . . . . . . . . . . . . . **8**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250 (1986)

*Brunner v. United States*,
70 Fed. Cl. 623, 628 (2006)

*Herbert Const. Co. v. Continental Insurance Co.*,
931 F.2d 989, 996 (1991)

*Hercules v. United States*,
516 U.S. 417 (1996)

*Mingus Constructors, Inc. v. United States*,
812 F.2d 1387, 1390-91 (Fed. Cir. 1987)

*Ralph Larsno & Son, Inc. v. United States*,
17 Cl. Ct. 39, 42 (1989)

*San Carlos Irrigation and Drainage Dist. v. United States*
877 F.2d 957

## Statutes

28 U.S.C 1491

## Rules

*Rules of the Court of Federal Claims* §56

## Restatements

*Restatement (Second) of Agency § 166 (1958)*

*Restatement (Third) of Agency § 3.03 (2006)*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DISTRIBUTION POSTAL CONSULTANTS, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | **Case No.: 08-17C** |
| **v.** | | **(Judge Bruggink)** |
| | * | |
| **THE UNITED STATES,** | * | |
| **Defendant.** | | |

***  *  *  *  *  *  *  *  *  *  *  *  ***

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Distribution Postal Consultants, Inc., by its attorneys, Robert B. Scarlett, Michael S. Myers, and Scarlett & Croll, P.A. respectfully requests this Court grant summary judgment to Distribution Postal Consultants, Inc., on Count I of its complaint, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").

**PLAINTIFF'S BRIEF**

QUESTION PRESENTED

Whether Distribution Postal Consultants, Inc., is entitled to summary judgment on Count I of Plaintiff's complaint because the United States Postal Service breached the contract of Distribution Postal Consultants, Inc. by prematurely terminating its license to process mail upon the unauthorized representations of a third-party.

STATEMENT OF FACTS

1. Distribution Postal Consultants, Inc., ("DPC") is in the business of producing, servicing and managing mail for its customer base for the purposes of sending mail throughout the

country and throughout the world in the most economic manner.

2. For over twenty (20) years, Plaintiff or its predecessor has dealt with the United States ("Defendant") and has entered into numerous agreements with the Defendant for postal discounts on its mailing services, which discounts it passes along to its customer base, thus providing a service to its customers which permits its customers to mail, both domestically and internationally, its letter and packages for a postal rate less than the Defendant's normal postal rate.

3. By providing this postal service, DPC produces millions of dollars of mail for Defendant, thus benefitting and profiting the Defendant.

4. An important and vital part of DPC's business operations is its international mail service, which comprises about fifty percent (50%) of the Plaintiff's total sales and is the Plaintiff's most profitable area of business.

5. On April 24, 2002, DPC and the United States Postal Service (the "USPS") entered into an International Customized Mail Service Agreement (the "Original ICM Agreement"), which had a term of three years and permits DPC to mail international mail at a specific percentage discount of sixteen percent (16%), provided that DPC places with the USPS at least $25,000,000.00 of actual postal on an annualized basis. A copy of the Original ICM Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

6. Mr. John Alepa ("Alepa"), the Manager of International Pricing/Cost Analysis for USPS, executed the Original ICM Agreement on behalf of the USPS. See Exhibit 1, p. 7 of 7.

7. Article 6, Section 5 of the Original ICM Agreement ( Ex. 1) permits either party to terminate the agreement only after providing the other party six (6) months notice in writing.

8. DPC expressly authorized its agent, Mr. Robert Dunbebin, the Vice-President of DPC

at that time, to execute the agreement on behalf of DPC.

9. On the same day, Mr. Dunbebin formed American Mail Sort, LLC, ("AMS") in which Mr. Dunbebin is the sole member and President. A copy of the Articles of Organization of AMS, date stamped April 24, 2002, is attached hereto as Exhibit 2.

10. Between April 24, 2002 and May 30, 2002, Mr. Dunbebin approached Mr. Alepa and requested that the Original ICM Agreement be terminated and requested that the USPS enter into a new ICM with his newly-formed company, AMS ("AMS ICM Agreement").

11. On May 30, 2002, after only 36 days into the three-year agreement, USPS terminated the agreement between DPC and the USPS upon Mr. Dunbebin's request and Mr. Alepa, on behalf of the USPS, signed a new ICM with AMS ("AMS ICM Agreement"). A copy of the AMS ICM Agreement is attached hereto as Exhibit 3[1].

12. AMS was not qualified for a ICM Agreement with the USPS pursuant to Section 623.2 of the International Mail Manual of 2002 requiring "a minimum of one year of experience as an international or domestic mail consolidator, presorter, or letter shop." Selected excerpts from the International Mail Manual of 2002 is attached hereto as Exhibit 4.

13. The business address of DPC listed in the Original ICM Agreement is identical to the address of AMS in the AMS ICM Agreement. *See* Exhibit 1, p. 6 of 7 (Indicating that notices be sent to "7914 E. Baltimore St., Baltimore Md 21224") and Exhibit 3, p. 1(indicating AMS's offices are at "7914 East Baltimore Street, Baltimore, MD 21224-2010").

14. At no time did DPC authorize, expressly or implicitly, Mr. Dunbebin to terminate the Original ICM Agreement.

---

[1] Plaintiff has possession of only pages 1 and 7 of the AMS ICM Agreement. Defendant included the AMS ICM Agreement as Exhibit 1 to its Motion for Summary Judgment however it, too, only contains pages 1 and 7.

15. At no time did DPC ratify the termination of the Original ICM Agreement.

16. Beginning in June of 2002, Mr. Dunbebin secretly changed the license number issued to DPC pursuant to the Original ICM Agreement to the license number issued to AMS.

17. The AMS license number was used to stamp all the mail that was processed in DPC's mail processing facility, thus all the mail processed at DPC's facility from May of 2002 to May of 2004 was posted to the account of AMS rather than the account of DPC.

18. DPC was unaware that its ICM was invalid until May of 2004.

19. Due to this "rerouting" of the postal traffic from DPC to AMS, DPC was unable to meet its minimum $25,000,000.00 in postal revenue.

20. In October of 2004, DPC filed a complaint against AMS and Robert Dunbebin alleging they fraudulently diverted funds from DPC to AMS.

21. On December 12, 2005, Plaintiff received a default judgment from the Circuit Court of Maryland against AMS and Robert Dunbebin, jointly and severally, in the amount of $755,197.21, plus $10,000,000.00 in punitive damages, for a total of $10,755,197.21. Attached hereto as Exhibit 5 is an Order of the Circuit Court of Maryland awarding $755,197.21, plus $10,000,000.00 in punitive damages, for a total of $10,755,197.21.

22. DPC has been monetarily harmed by the termination of the Original ICM Agreement.

23. Plaintiff, at all times, performed its obligations, conditions and agreements imposed by the Original ICM Agreement good faith and in fair dealing.

24. An affidavit of Louis F. Haber, Jr. supporting the above facts is attached as Exhibit

.

## ARGUMENT

## I. SUMMARY JUDGMENT IS APPROPRIATE AS TO COUNT I OF PLAINTIFF'S COMPLAINT.

DPC seeks summary judgment on the issue of liability only and not to damages. Summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. FCFC 56 (c). USPS has not disputed the amount of damages at this time, however, it has not been required under the rules to dispute the allegations of the complaint while its dispositive motions are pending. As such, DPC is unaware of the USPS's position on the issue of the amount of damages.

Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *RCFC 56(c), Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); *Ralph Larsno & Son, Inc. v. United States*, 17 Cl. Ct. 39, 42 (1989). The USPS has not contested in its papers filed in this proceeding [2] any material facts presented by DPC, and DPC has not, in turn, disputed any material fact presented by the United States.

In fact, USPS takes a firm position that there are no genuine issues of material fact in its Reply to Response to Motion for Summary Judgment and Defendant's Motion to Dismiss [Doc. 12]. *(See* Argument II, Paragraph A). Indeed, DPC agrees that there are no general issues of material fact. The remaining issue upon which this Court needs to address before granting summary judgment is whether DPC is entitled to Judgment as a matter of law.

Generally, both parties acknowledge that on April 24, 2002, DPC and USPS entered into

[2] Defendant filed a Motion for Summary Judgment and, in the Alternative, Defendant's Motion to Dismiss [Doc. 7], Proposed Findings of Uncontroverted Fact [Doc. 8], and Reply to Response to Motion for Summary Judgment and Defendant's Motion to Dismiss [Doc. 12])

the Original ICM Agreement, attached hereto as Exhibit 1. On May 30, 2002, after only 36 days into the three-year agreement, USPS terminated the ICM Agreement of DPC. The primary issue in this case is the legal status of Mr. Dunbebin, the individual upon whose representations USPS relied upon to terminate the contract.

The United States takes the position that Mr. Dunbebin had automatic authority to terminate the Original ICM Agreement because he had the actual authority to sign the Original ICM Agreement on behalf of DPC. DPC takes the position that USPS was on notice of facts that indicate that Mr. Dunbebin was acting, or may have been acting, in a manner inconsistent with his principal's best interest. USPS had a duty to investigate Mr. Dunbebin's authority before terminating the ICM. Therefore, Mr. Dunbebin's apparent authority to terminate the Original ICM Agreement was extinguished upon the USPS's failure to investigate his authority.

## II. DEFENDANT COULD NOT RELY ON THE "APPARENT" AUTHORITY OF MR. DUNBEBIN

Mr. Dunbebin did not have actual or apparent authority to terminate the Original ICM Agreement. Normally, "third parties who interact with the principal through the agent will naturally and reasonably assume that the agent had authority to do acts consistent with the agent's position or role ***except*** when the third party has notice of facts suggesting that this may not be so." *Restatement (Third) of Agency* § 3.03 cmt. b (2006)(emphasis added).

The USPS has argued that Mr. Dunbebin had actual authority to execute the Original ICM Agreement and, therefore, he was "cloaked" with apparent authority to terminate it. An exception to this rule is when "circumstances indicate that the agent may be acting in fraud of the principal." *Brunner v. United States*, 70 Fed. Cl. 623, 628 (2006), citing *Restatement (Second) of Agency § 166*

*cmt. c. (1958)*. When this exception applies, "the third party has the duty to use reasonable means to investigate the scope of the agent's authority."*Brunner*, at 629. The duty to inquire arises when the facts and circumstances are such as to put him on inquiry, the transaction is "extraordinary", or the "novelty" of the situation alerts the third party to the danger of fraud. *Herbert Const. Co. v. Continental Insurance Co.*, 931 F.2d 989, 996 (1991)(citing cases).

In this case, USPS had notice of the following undisputed facts that alerted it to the danger of fraud of the principal:

1. Mr. Dunbebin desired to terminate a three-year contract only after 36 days;
2. The ICM Agreement permitted termination of the Agreement only after a party seeking its termination provides with six (6) months prior notice to the other party;
3. Mr. Dunbebin, as Vice-President of DPC, wanted to terminate DPC's contract and, on the same day, execute an ICM with AMS, an artificial company owned by Mr. Dunbebin in which he was the president;
4. DPC and AMS had the same corporate address;
5. AMS was not operating for one year prior to USPS granting the ICM.

USPS had notice of facts 1 through 4 above by virtue of dating and signing the two ICM agreements. The ICM agreements contained these facts within the "four corners" of the documents. USPS had notice of fact No. 5 above because its own regulations, the International Mail Manual of 2002, requires a company seeking an ICM to have a minimum of one year of operation.

Mr. Alepa, the USPS agent authorized to sign ICMs, had notice of circumstances that indicate Mr. Dunbebin, a DPC employee, may have been plotting to divert funds from DPC to his own artificial company, AMS. And in fact, DPC was awarded judgment on DPC's claim of fraud

against AMS and Mr. Dunbebin for redirecting funds away from DPC to AMS. Mr. Dunbebin's plan to commit the fraud depended upon the USPS turning a "blind eye" to the facts enumerated above to terminate DPC's contract.

This transaction was "extraordinary" because the USPS effectively transferred the ICM agreement from a company clearly entitled to an ICM to a company that clearly was not. The transaction was "novel" in that the agent for DPC was also the agent for AMS and DPC and AMS had an identical address. The novelty of these facts should have alerted Mr. Alepa to the danger of fraud. A person in Mr. Alepa's position should be diligent in determining the authority of a signer of any contract entered into by the USPS. It was not reasonable for Mr. Alepa, the "Manager, International Pricing/Cost Analysis" of the USPS, to rely upon Mr. Dunbebin's own representations that he had authority to terminate the Original ICM Agreement with knowledge of this information.

Under these circumstances, USPS had a duty to use reasonable means to determine Mr. Dunbebin's authority. Despite Mr. Dunbebin's suspicious activities, USPS failed to make an inquiry to DPC regarding Mr. Dunbebin's actual authority to terminate the contract. If it had inquired, DPC would have stated that Mr. Dunbebin had no authority to terminate the Original ICM Agreement.

## III. THE UNITED STATES BREACHED ITS CONTRACT WITH DISTRIBUTION POSTAL CONSULTANTS

The Tucker Act confers upon the court jurisdiction to hear and determine, *inter alia*, claims against the United States found upon any "express or implied" contract with the United States. *Hercules Inc. V. United States*, 516 U.S. 417 (1996)(*citing* 28 U.S.C. 1491(a)). To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2)

an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *San Carlos Irrigation and Drainage Dist. V. United States*, 877 F.2d 957.

The United States and DPC entered into a three-year written contract. The United States breached the contract by terminating the original ICM Agreement after 36 days based on the representations of an unauthorized third-party, Mr. Dunbebin. This action of the United States damaged DPC because the sales of DPC were redirected to AMS. DPC would collect 1% of the gross postage ran through the ICM over the three-year period if properly licensed and controlled by DPC.

## CONCLUSION

For the above stated reasons, Distribution Postal Consultants, Inc. respectfully requests that Plaintiff's Motion for Summary Judgment be Granted.

Respectfully submitted,

Date: June 18, 2008

/s/ Robert B. Scarlett
Robert B. Scarlett

Date: June 18. 2008

/s/ Michael S. Myers
Michael S. Myers

Scarlett & Croll, P.A.
201 North Charles Street, Suite 600
Baltimore, Maryland 21201
410-468-3100

*Attorneys for Defendant*

## Certificate of Service

I hereby certify that on this 18th day of June, 2008, a copy of the foregoing Plaintiff's Response to Defendant's Motion for Summary Judgment and, in the Alternative, Defendant's Motion to Dismiss, and Plaintiff's Motion for Summary Judgment was sent via first class mail, postage prepaid, to:

Mathew H. Solomson, Esquire
Trial Attorney
Commercial Litigation Branch
Civil Division, U. S. Department of Justice
Attn: Classification Unit, 8th floor
1100 L Street, N. W.
Washington, D.C. 20530

/s/ Michael S. Myers
Michael S. Myers

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DISTRIBUTION POSTAL CONSULTANTS, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: 08-17C** **(Judge Bruggink)** |
| **THE UNITED STATES,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S EXHIBIT LIST**

| Exhibit # | Exhibit Name |
|---|---|
| 1. | International Custom Mail Service Agreement between Distribution Postal Consultants, Inc. And the United States Postal Service. |
| 2. | Articles of Organization of American Mail Sort, LLC. |
| 3. | International Custom Mail Service Agreement between American Mail Sort and the United States Postal Service |
| 4. | Excerpts from International Mail Manual of 2002 |
| 5. | Judgement and Order of the Circuit Court of Maryland for Baltimore City |
| 6. | Affidavit of Louis F. Haber, Jr. |

Exhibit 1

International Custom Mail Service Agreement between
Distribution Postal Consultants, Inc. and the United States Postal Service.

Exhibit 2

Articles of Organization of American Mail Sort, LLC.

Exhibit 3

International Custom Mail Service Agreement between American Mail Sort and the United States Postal Service.

Exhibit 4

Excerpts from International Mail Manual of 2002.

Exhibit 5

Judgment and Order of the Circuit Court of Maryland for Baltimore City.

Exhibit 6

Affidavit of Louis F. Haber, Jr.