**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DISTRIBUTION POSTAL CONSULTANTS, INC.,** | * | |
| | * | |
| **Plaintiff,** | | |
| | * | **Case No.: 08-17C** |
| **v.** | | **(Judge Bruggink)** |
| | * | |
| **THE UNITED STATES,** | | |
| | * | |
| **Defendant.** | | |

* * * * * * * * * * * * *

**AFFIDAVIT OF LOUIS F. HABER, JR.**

THE UNDERSIGNED AFFIANT HEREBY CERTIFIES, this 17th day of June, 2008, as follows:

a. The Affiant is the President of the Plaintiff;

b. The Affiant has read the Plaintiff's Motion for Summary Judgement, and believes that the facts set forth in the Motion are true and correct to the best of the Affiant's knowledge, information and belief;

c. This affidavit is made upon personal knowledge and sets forth facts which the Affiant believes are correct to the best of his knowledge, information and belief;

1. Distribution Postal Consultants, Inc., ("DPC") is in the business of producing, servicing and managing mail for its customer base for the purposes of sending mail throughout the country and throughout the world in the most economic manner.

2. For over twenty (20) years, Plaintiff or its predecessor has dealt with the United States (" Defendant") and has entered into numerous agreements with the Defendant for postal discounts on its mailing services, which discounts it passes along to its customer

base, thus providing a service to its customers which permits its customers to mail, both domestically and internationally, its letter and packages for a postal rate less than the Defendant's normal postal rate.

3. By providing this postal service, DPC produces millions of dollars of mail for Defendant, thus benefitting and profiting the Defendant.

4. An important and vital part of DPC's business operations is its international mail service, which comprises about fifty percent (50%) of the Plaintiff's total sales and is the Plaintiff's most profitable area of business.

5. On April 24, 2002, DPC and the United States Postal Service (the "USPS") entered into an International Customized Mail Service Agreement (the "Original ICM Agreement"), which had a term of three years and permits DPC to mail international mail at a specific percentage discount of sixteen percent (16%), provided that DPC places with the USPS at least $25,000,000.00 of actual postal on an annualized basis.

6. Mr. John Alepa ("Alepa"), the Manager of International Pricing/Cost Analysis for USPS, executed the Original ICM Agreement on behalf of the USPS.

7. Article 6, Section 5 of the Original ICM Agreement permits either party to terminate the agreement only after providing the other party six (6) months notice in writing.

8. DPC expressly authorized its agent, Mr. Robert Dunbebin, the Vice-President of DPC at that time, to execute the agreement on behalf of DPC.

9. On the same day, Mr. Dunbebin formed American Mail Sort, LLC, ("AMS") in which Mr. Dunbebin is the sole member and President.

10. Between April 24, 2002 and May 30, 2002, Mr. Dunbebin approached Mr. Alepa and requested that the Original ICM Agreement be terminated and requested that the USPS enter into a new ICM with his newly-formed company, AMS ("AMS ICM Agreement").

11. On May 30, 2002, after only 36 days into the three-year agreement, USPS terminated the agreement between DPC and the USPS upon Mr. Dunbebin's request and Mr. Alepa, on behalf of the USPS, signed a new ICM with AMS ("AMS ICM Agreement").

12. AMS was not qualified for a ICM Agreement with the USPS pursuant to Section 623.2 of the International Mail Manual of 2002 requiring "a minimum of one year of experience as an international or domestic mail consolidator, presorter, or letter shop."

13. The business address of DPC listed in the Original ICM Agreement is identical to the address of AMS in the AMS ICM Agreement.

14. At no time did DPC authorize, expressly or implicitly, Mr. Dunbebin to terminate the Original ICM Agreement.

15. At no time did DPC ratify the termination of the Original ICM Agreement.

16. Beginning in June of 2002, Mr. Dunbebin secretly changed the license number issued to DPC pursuant to the Original ICM Agreement to the license number issued to AMS.

17. The AMS license number was used to stamp all the mail that was processed in DPC's mail processing facility, thus all the mail processed at DPC's facility from May of 2002 to May of 2004 was posted to the account of AMS rather than the account of DPC.

18. DPC was unaware that its ICM was invalid until May of 2004.

19. Due to this "rerouting" of the postal traffic from DPC to AMS, DPC was unable to meet its minimum $25,000,000.00 in postal revenue.

20. In October of 2004, DPC filed a complaint against AMS and Robert Dunbebin alleging they fraudulently diverted funds from DPC to AMS.

21. On December 12, 2005, Plaintiff received a default judgment from the Circuit Court of Maryland against AMS and Robert Dunbebin, jointly and severally, in the amount of $755,197.21, plus $10,000,000.00 in punitive damages, for a total of $10,755,197.21.

22. The USPS breached its contract with DPC by wrongly terminating the Original ICM Agreement.

23. Defendant's improper action of allowing American Mail Sort to use the international mail license directly caused Plaintiff to fail in its obligations to meet its licensing sales of $25,000,000.00, as required by Defendant in the International Mail License.

24. As a result of Defendant's improper actions, DPC has been monetarily harmed.

25. Plaintiff, at all times, performed its obligations, conditions and agreements imposed by the International Mail License in good faith and in fair dealing.

d. The Affiant hereby solemnly affirms, under the penalties of perjury, that the matters and facts set forth in the above Affidavit are true and correct to the best of the Affiant's personal knowledge, information and belief; and

e. The Affiant is over eighteen years of age and is competent to testify at any hearing or trial on the matters set forth in this Affidavit.

e. The Affiant is over eighteen years of age and is competent to testify at any hearing or trial on the matters set forth in this Affidavit.

Louis F. Haber, Jr., Affiant